W. H. GAHAGAN, Inc., v. TUCKER STEVE-DORING CO. THE CLAREMONT. GAHAGAN DREDGING CO., Inc., v. TUCKER STEVEDORING COMPANY.

(Circuit Court of Appeals, Third Circuit. November 26, 1926.)

Nos. 3421, 3422.

1. Negligence ⊜1—Negligence is improper act or omission.

Negligence is the doing of that which ought not be done, or the failure to do that which ought to have been done, under the circumstances.

2. Canals ⊜29—Proof of failure to guard against dangerous condition of canal bank held necessary to show negligence of dredge as to steamer injured by wave.

Libelant, charging that dredge at canal bank caused earth to fall and make displacement wave, resulting in damage to steamer, *held* required to show such a dangerous condition of bank as required dredge to guard against it, and failure to do so, in order to establish negligence.

**3. Canals ⬳30—Injury to steamer by wave caused by dredge in canal held not alone proof of negligence.**

That dredge at canal bank caused earth to fall and make displacement wave, which raised steamer, and then let it fall and strike submerged pile, *held* not alone proof of negligence.

**4. Canals ⬳30—Proof of condition of canal bank where dredge was working some time after injury to steamer by wave held not proof of condition at time of injury.**

Work being progressive, proof of condition of canal bank some time after alleged fall of earth, causing displacement wave which damaged steamer, *held* not proof of condition at time of accident.

**5. Canals ⬳29—Use of hydraulic dredge on canal bank held not negligence as to steamer injured by wave.**

Use of hydraulic dredge in excavation work on canal bank in itself *held* not negligence, in libel for damage to steamer from displacement wave.

**6. Canals ⬳30—Absence of proof of condition of canal bank before fall of earth causing wave held to preclude recovery for injuries to steamer.**

In libel for damages to steamer from displacement wave caused by dredge at canal bank, absence of proof of condition of bank before alleged fall of earth causing wave *held* to preclude recovery.

Appeal from the District Court of the United States for the District of Delaware; Hugh M. Morris, Judge.

Libels by the Tucker Stevedoring Company against W. H. Gahagan, Inc., and against the dredge Claremont, etc., the Gahagan Dredging Company, Inc., claimant. Decrees for libelant and respondents appeal. Reversed.

For opinion below, see 6 F.[2d] 407.

Austin J. McMahon, of New York City, and Francis De H. Janvier and Edmund S. Hellings, both of Wilmington, Del., for appellants.

William G. Mahaffy, of Wilmington, Del., and Francis S. Laws (of Lewis, Adler & Laws), of Philadelphia, Pa., for appellee.

Before BUFFINGTON and DAVIS, Circuit Judges, and THOMSON, District Judge.

THOMSON, District Judge. These are actions in admiralty, No. 3421 in personam and No. 3422 in rem, brought by the Tucker Stevedoring Company against Gahagan, Inc., and the dredge Claremont and Gahagan Dredging Company, to recover damages for injuries to the hoisting steamer Glee in the Chesapeake & Delaware Canal near midnight on December 1, 1923. The appellant in both actions is referred to as the claimant, and the appellee as the libelant. The trial court found in favor of the libelant on all the issues of fact, directing a decree for libelant in both actions; the damages being assessed at $13,409.26 and costs, and a single decree being entered, from which these appeals are taken.

The question of the amount of the damages is not in issue; the appeals involving the correctness of the court's findings of fact and conclusions of law.

It is claimed by the libelant that the Glee was sunk as a result of a fall of earth from the bank of the canal in which the claimant's dredge Claremont was digging; that this fall created a displacement wave, which caused the Glee to rise and fall in the water, and in its descent struck a submerged wreck, over which the Glee was moored, injuring the Glee to such an extent as to cause it to fill and sink. The claimant had been engaged in the work of widening and deepening the canal, and was engaged in this work at a point about 150 feet away from where the Glee was moored. The method employed in performing the work was to dig and loosen the earth at the bottom of the bank, and when the falling earth mingled with the water it was pumped by the dredge from the bottom of the canal onto the mainland. It is alleged by the libelant that the claimant performed the work of dredging and widening the canal in a careless, negligent, and improper manner, not usually employed in performing work of this character, and that the method so employed was dangerous to other vessels in the canal.

The claimant, by way of answer, alleges that the hoister was unlawfully moored at the place in question, not properly manned and equipped, did not maintain an efficient watch, and was in a damaged and leaking condition, due to the age of the vessel and injuries which it had previously sustained. The claimant denies that any such fall of earth or displacement wave occurred, or that the Glee was in any way injured as a result of the dredging operation; denies that the operations were conducted in a negligent manner, or that the method of operation was unusual or dangerous, but, on the other hand, was in accordance with the most approved methods. It will thus be seen that there were many, and seriously controverted, questions of fact. The dredging work had been in operation more than a year prior to the date of the accident; the claimant doing the work under a contract with the Unit-

ed States for a distance of about two miles along the north bank of the canal. The channel was to be dug with a bottom width of 90 feet and a depth of 12 feet below mean low water. At the time of the accident about half of the work had been done. The contract provided that the excavation might be done by wet—i. e., hydraulic—or dry excavation, as might be most satisfactory to the contractor. The hydraulic method was employed, and the work was under the general supervision of the engineers of the government, and seems to have met with their approval. It appears that this method had been employed continuously through the previous year.

The vital question of fact was: What caused the sinking of the barge? Was it due to a heavy fall of earth when the excavation was proceeding, with the resulting displacement wave sufficient in force to raise the barge and break the hull in its descent, when coming in contact with the sunken boat? This was a serious question of fact, under all the circumstances of the case, particularly in view of the fact that the claimant's dredge was at work near the cut when the fall is alleged to have occurred, and the numerous witnesses on the dredge said that there was no such fall of earth and that no wave was noticed. If this were true, then the libelant's theory as to the cause of the sinking was erroneous, and its case would fail on the facts.

[1] But, assuming that the court's finding, for which we have much respect, although based purely on circumstances, was correct, that an unusual fall of earth did cause a displacement wave of sufficient magnitude to cause the sinking, another legal trouble presents itself. Whether negligence caused the fall of earth would depend entirely on the conditions as they existed and presented themselves to the dredgers at the time the fall occurred. The appellant was engaged in a perfectly lawful and necessary work for the government; liability, if existing at all, could arise only in this case through negligence in the performance of the work; that is, the doing of that which ought not to be done, or neglecting to do that which ought to have been done under the circumstances.

[2] The burden would be upon the libelant to show such a condition, existing at that time, such a condition of danger, as required them to anticipate and guard against it, in order that their failure to do so would be deemed negligence. There is not a scintilla of testimony as to the condition of the bank at the time the alleged fall is said to have occurred. Whether the bank was sloping back, or perpendicular, or overhanging, there is no evidence whatever to inform us.

[3] Negligence cannot be assumed from the mere fact of the accident, but must be shown by the weight of the evidence to have existed, and the injury complained of to be the proximate result of that negligence. If, however, libelant relies on establishing such a condition at the time of the accident as should have been observed and guarded against, they have failed, because that condition has not been directly or indirectly proved.

[4] As the work was progressive, and the form and condition of the bank necessarily changed as the work advanced, its form or condition at a later period is no evidence of its condition at the time the accident occurred. When pressed upon this point at the argument of the case, counsel were compelled to take the position that the method of dredging itself, viz. the use of the hydraulic dredge, was negligence.

[5, 6] The trial court does not take this position, nor is it supported by the testimony. The hydraulic method was used by the consent and concurrence of the government, and appears to be a well-recognized and lawful method of dredging. Even assuming as correct the court's findings of fact that the fall of the earth caused the displacement wave, which in turn resulted in the sinking of the boat, defendant's negligence in allowing such a fall of earth under the circumstances has not been established, and therefore the libelant cannot recover.

The decrees are therefore reversed, with costs to the appellants.