## THE NO. 4.

### PAN–AMERICAN PETROLEUM & TRANSP. CO. v. GREAT LAKES DREDGE & DOCK CO. et al.

District Court, S. D. New York.   June 7, 1928.

1. **Navigable waters** ⬤�longdash;26(3)—Libelant, suing for damages to boat striking rock in channel, had burden to show dredging boat caused damage, and that dredging company was required to guard against danger.

Libelant, seeking to recover damage for striking of ship on submerged obstruction in channel from company engaged in dredging, had burden to establish that rock which caused damage was placed in channel by respondent's drillboat, and that dangerous condition was created by blasting of channel, which required respondent to anticipate and guard against danger.

2. **Navigable waters** ⬤⟶25—Dredging company, blasting in channel, held not liable under evidence for damages to ship striking obstruction.

Company engaged in blasting operations in dredging channel *held* not liable for damages to ship striking obstruction therein for failure to give proper warnings and signals, where it was not shown that dangerous condition was created, and where the captain of the damaged ship, knowing of the blasting operations, nevertheless failed to keep on the clear side of the channel.

In Admiralty.   Libel by the Pan-American Petroleum & Transport Company, owner of the steamship Cerro Azul, against the drill boat No. 4; the Great Lakes Dredge & Dock Company, claimant and respondent. Decree dismissing libel.

Burlingham, Veeder, Masten & Fearey, of New York City (Chauncey I. Clark and P. Fearson Shortridge, both of New York City, of counsel), for libelant.

Kirlin, Woolsey, Campbell, Hickox & Keating, of New York City (Ira A. Campbell and William H. Arnold, both of New York City, of counsel), for claimant and respondent.

WINSLOW, District Judge.   This suit by libelant, owner of the steamship Cerro Azul, is against drill boat No. 4 in rem and Great Lakes Dredge & Dock Company, owner of drill boat No. 4, in personam, to recover for damage sustained by the Cerro Azul on February 12, 1924, alleged to have been caused by striking a submerged obstruction created by the respondent in the Kill van Kull.

For several months prior to February 12, 1924, this drill boat No. 4, under contract with the United States government, had been engaged in the work of deepening the channel through Kill van Kull to the west side of Shooters Island. The channel in which the work was being carried on previously had a minimum depth of 25 feet at mean low water, and the northerly half, where the accident happened, was being deepened to a depth of 31 feet at mean low water. The navigable channel at this point where the work was being done was 400 feet wide, and the work was over an area 200 feet wide between the center line of the channel and the northerly side. This left a clear breadth of channel of 200 feet to the southerly side of the center line, in which no work was being done, and which was open for unrestricted navigation.

On the afternoon of February 12, 1924, the Cerro Azul, drawing 22 feet 11 inches forward and 22 feet 10 inches aft, was proceeding through the Kills, bound for Carteret, N. J. The weather was clear, tide high water, slack, and no wind. The Cerro Azul went to the northward of the center line of the channel over the area where the drilling and blasting was being done. She could have proceeded on the southerly side of the channel, which was free for navigation. There is no evidence that any shipping was at that time passing through the southerly side. When abreast of the drill, the Cerro Azul struck some obstruction on the bottom. She proceeded to Carteret, where she was found to be damaged and leaking.

[1, 2] Two questions present themselves for determination. The question of fact must first be answered. What was the obstruction in the channel with which the Cerro Azul came in contact? If this be answered that the obstruction was rock cast up by the blasting of the channel by the respondent, then the burden is upon the libelant to show that this condition was a condition of danger of such character as required the respondent to anticipate and guard against it, in order that such failure to do so would be deemed negligence. Manifestly, the burden is on libelant to establish by competent evidence that the Cerro Azul was damaged by striking rock placed in the navigable channel by drill boat No. 4. The mere fact of an accident cannot raise the presumption of negligence. This record does not, to my mind, establish by the weight of evidence that the Cerro Azul came in contact with rock cast up by the blasting. That is the inference merely. It is true that witnesses have testified, after seeing the vessel in dry dock, that contact with rocks would have been a competent producing cause. Soundings

made after the accident at the place of grounding did not disclose any obstruction of the character suggested. No one has seen or discovered the supposed rocks. The obstruction might well have been submerged wreckage.

At mean low water, the channel had a minimum depth of 25 feet. The accident happened at high water, and it is conceded that high water was 5 feet above mean low water. With the ship drawing less than 23 feet, there was at least 7 feet of water between her keel and the bottom of the channel. Witnesses have testified, further, that the place where the vessel's bottom showed damage was away from the keel, and at least one foot higher than the keel, so that any submerged rock would have stood at least 8 feet above the channel floor. The testimony of the experts is that the holes made by the drills were about 6 feet apart, and the blasting in no case cast up the rock high enough to come in contact with the vessel's bottom. On the record before me, I think it would be speculation to conclude that the Cerro Azul came in contact with the rock cast up by the blasting of the drill.

The work was being carried on in the usual manner under the direction and approval of United States engineers. Experts have testified that it was not required, nor was it advisable, that the rock should be removed immediately after being blasted. Experienced men were directing the work. The record shows, without dispute, that, if the dredging operation immediately followed the blasting, the dislodged rock in the bottom of the channel would have been thrown up in ridges, and to that extent would lessen the depth of the channel. The dredging of the blasted area was to be done after the drilling and blasting had been completed. The evidence warranted the conclusion that the respondent's operations were conducted in a proper and customary manner, with the approval of competent United States engineers.

Even if we were to assume, however, that the libelant had established by competent evidence that the contact was with rocks thrown up by the blasting, I do not think on this record that respondent's negligence can be predicated thereon. The captain of the Cerro Azul knew that blasting was going on. He had been through this channel many times, sometimes several times daily, and was thoroughly familiar with the working of the drill boat. He knew that the southerly half of the channel was unrestricted, and that it was merely a matter of careful navigation to go on that side. Moreover, two days after the accident, he piloted another vessel, the Edward L. Doheny, Jr., over the same course as that on which he had taken the Cerro Azul at the time of her alleged grounding. The Edward L. Doheny, Jr., was of practically the same depth as the Cerro Azul. He took his chance on both occasions. He had operated his vessel on previous occasions so close to the drill as to lead to a formal complaint by the respondent. The captain of the Cerro Azul, as a result of this complaint, had been summoned, in January, to the office of the United States engineer, and warned of the danger of navigating his boat so close to the drill.

While it is true that the occasion of the summoning of the captain was because of his alleged lack of care, I am satisfied that he was then personally warned that the northerly half of the channel, by reason of the operations going on, was more or less dangerous. He had very definite information, on his own admission, as to the precise character of the blasting operations being conducted by the respondent for the government. Moreover, neither the respondent nor the United States engineer in charge of the work had any reason to suppose that the drilling and blasting could cast up a rock of the size which would have been required to have damaged the Cerro Azul, even if that fact were established by competent evidence. The burden is upon the libelant to show such a condition of danger as required the respondent to anticipate and guard against it. Gahagan v. Tucker (C. C. A.) 15 F.(2d) 935.

I do not think the libelant has sustained its burden, when it charges that the respondent failed to give proper signals and warnings. On the contrary, I think the libelant had actual warning of the precise character of the operations being conducted, and preferred to take his chance over this particular area, for his own convenience.

Decree will be for respondent and claimant, dismissing the libel.